USDC SCAN INDEX SHEET

















JPP    10/24/03    10:59
3:03-CV-02104    ZUBKIS V. DONALDSON
*1*
*CMP.*

1136 42



1  Vladislav Steven Zubkis
   4364 Bonita Road
2  Suite 476
   Bonita, California 91902
3  (619) 475-2522
   (619) 889-6660
4

FILED

03 OCT 23 PH 1: 19

5

6

7

8              UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF CALIFORNIA
9

10  Vladislav steven Zubkis                )
                                           )    Case No: 03 CV  2104 JH AJB
11          Plaintiff,         .           )
                                           )
12          v.                             )
                                           )    COMPLAINT FOR VIOLATION
13  William H. Donaldson, Cynthia A.       )    OF VESTED RIGHTS; VIOLATION
    Glassman, Harvey J. Goldschmid, Paul S.)    OF CONSTITUTION AND LAWS OF
14  Atkins, Roel C. Campos,  Elizabeth     )    THE UNITED STATES; FRAUD UPON
    Jacobs, Carmen J. Lawrence, Edwin H.   )    THE COURT; FRAUD
15  Nordlinger, Henry Klehm III, Jacqueline)    Under Article III, Section 2-Diversity of
    A Zucker, Kay L. Lackey, Ernest E.     )    citizenship.
16  Badway, Wayne M. Carlin, Mark K.       )
    Schonfeld, Peter A. Pizzani, John J.   )
17  Graubard, Anthony J. Bosco, Peter      )
    Sack and John Does 1-5                 )
18                                         )
                                           )
19          Defendants.                    )
    _____    )

20          I, Vladislav Steven Zubkis, swear under penalty of perjury that the following is true and

21  correct to the best of my knowledge and that I am competent to testify to the matters stated

22  therein.

23                      PRELIMINARY ALLEGATIONS

24          1. This is an honest and actual antagonistic assertion of rights by one individual Plaintiff in

25  pro per, me, against other individuals, Defendants; this controversy is NOT unripe or premature,

26  my own rights are affected; I have been damaged in my person and property by unlawful action of

27  Defendants; the right to possession and enjoyment of property under the general law is in issue; I

28  has not waived or forfeited any right. The enforcement officers for the SEC have confiscated my

-1-

1  income-earning property, made general assassination of character in the business and investment

2  world, and specific attempts to intimidate and threaten people planning to do business with me.

3  Plaintiff's property has been confiscated to satisfy disgorgement and has refused to credit any

4  amount to the satisfaction of said disgorgement. Property was taken for public use, without just

5  compensation and my privacy was violated, property was seized, property was taken, there was

6  Libel, slander, fraud, and fraud upon the court. A Bivens type action.

7      2. The jurisdiction of this court, in this particular controversy, is as follows:

8  Article III, Section 2. [§1.] The judicial Power shall extend to all cases, in Law and Equity,

9  **arising under this Constitution, the Laws of the United States**, and Treaties made, or which

10  shall be made, under their Authority;- to all Cases affecting Ambassadors, other public Ministers

11  and Consuls;- to all Cases of admiralty and maritime Jurisdiction;- to controversies to which the

12  United States shall be a Party; ;-to Controversies between two or more States ; -between a State

13  and Citizens of another State ;- **between Citizens of different States,** - between Citizens of the

14  same State claiming Lands under Grants of different States, and between a State, or the Citizens

15  thereof, and foreign States, Citizens or Subjects. Emphasis mine.

16      3. This controversy falls under authority of "arising under" clause of Article III of the

17  CONSTITUTION of the United States of America and its correct decision depends upon

18  construction of either the Constitution or law of the United States. *Tennessee v. Davis, 100 U.S.*

19  *257, 25 L.Ed 648; Bell v. Hood, 327 U.S. 678, 90 L.Ed 939, 66 S.Ct 773, 13 ALR 2d 383.* This is

20  the express authority for this Court to take jurisdiction. The parties are Citizens of different States

21  and the controversy depends on the construction of either the Constitution or law of the United

22  States. The matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest

23  and costs.

24      4. Should the Court assigned this controversy, lack the authority to decide violations of

25  the law of the United States and constitutional issues in which the United States is not a party "at

26  law or in law", Plaintiff requests this court transfer this controversy to the appropriate venue and

27  jurisdiction or send it back to Vladislav Steven Zubkis, the Plaintiff.

28      5. Should this Court NOT have Article III protection, this court has no jurisdiction to hear

-2-

1    this controversy. *Evans v. Gore*, 235 U.S. 245; *Northern Pipeline v. Marathon Pipeline Co.*, 102

2    S.Ct 2858 (1982); *U.S. v. Woodley*, 726 F.2d 1328; *U.S. v. Will*, 449 U.S. 200, 217-218.

3    Plaintiff places this Court on notice requiring it to uphold its subscribed Oath of office while

4    executing its judicial duties as per 28 U.S.C. § 453, and demands this cause NOT be heard in any

5    court which is neither limited by nor protected by Article III. *Glidden Co. v. Zdanok*, 370 U.S.

6    530, 583 (1962); *Marbury v. Madison, 1 Cranch 137, 1803.*

7    There is no more sacred duty of a court than, in a case properly before it, to
maintain unimpaired those securities for the personal rights of the individual which
8    have received for ages the sanction of the jurist and the statesman; and in such case
no narrow or illiberal construction should be given to the words of the fundamental
9    law in which they are embodied." *Miller, J., Ex parte Lange* 85 U.S. 163, 178.

10    6. Plaintiff, Vladislav Steven Zubkis is before the court unrepresented, suing herein

11    Defendants as individuals for damage to Plaintiff, for violating his vested rights while enforcing

12    the Securities Acts of 1933 and 1934, 15 U.S.C. 15 and 17. This is a suit for specific relief against

13    enforcement officers of the sovereign and not suit against the sovereign. The enforcement officers

14    purport to act as individuals and not in their official capacity.

15    7. Vladislav Steven Zubkis is a private individual, *Hale v. Henkel, 201 U.S. 43*, 74, Citizen

16    of the State of California, a several State, and a resident of the City of Bonita, in the County of

17    San Diego, California whose business is chartered in the State of Nevada and whose principal

18    place of business is California.

19    8. Defendants William H. Donaldson, Cynthia A. Glassman, Harvey J. Goldschmid ,, Paul

20    S. Atkins, Roel C. Campos,  Elizabeth Jacobs, Carmen J. Lawrence, Edwin H. Nordlinger, Henry

21    Klehm III, Jacqueline A Zucker, Kay L. Lackey, Ernest E. Badway, Wayne M. Carlin, Mark K.

22    Schonfeld, Peter A. Pizzani, John J Graubard, Anthony J. Bosco, Peter Sack and John Does 1-5

23    (to be named later), residence addresses unknown are, Commissioner, directors or enforcement

24    attorneys for the Securities and Exchange Commission an Independent Establishment or

25    Corporation of the Executive Department, employed in the Northeast Regional Office of the

26    Securities and Exchange Commission in New York City, State of New York or in Washington

27    D.C.

28    9. Defendants herein named are sued as private individuals acting under color of federal

-3-

1   authority, responsible for damaging Plaintiff and his business. Defendants had prior "notice" that

2   their actions lack the delegated powers, abused their discretion and acted arbitrarily and

3   capriciously. Defendants deprived Plaintiff of the protection afforded him by the Constitution and

4   laws of the United States, Articles in addition to and Amendment of the CONSTITUTION of the

5   United States of America, comparable unalienable rights secured by the California Constitution

6   and California law. See *Larson v Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-690,

7   S.Ct. 1457 (1949): Defendants actions are ultra vires and therefore may be made the object of

8   specific relief. "It is important to note [*337 U.S. 682 , 690*] that in such cases the relief can be

9   granted, without impleading the sovereign, only because of the officer's lack of delegated power."

10  The officer is not doing the business which the sovereign has empowered him to do or he is doing

11  it in a way which the sovereign has forbidden. Defendants acted upon private individuals and

12  business when the United States is not damaged in its property or its business, not a purchaser of

13  securities and no crime has been alleged.

14          10. Defendants alleged in their complaint, case # 8086 (JGK) in the United States District

15  Court for the Southern District of New York, that Plaintiff herein "used fraudulent scheme to

16  raise funds, in the unregistered sale of securities, used fraudulent means to distribute securities to

17  investors, used fraudulent practices to sell securities, misrepresentation and omission, baseless

18  price predictions, disseminated false and misleading press releases and financial information to

19  investors." However reprehensible in morals, is not within the purview of the statute when

20  properly construed in the light of its history and the purposes intended to be accomplished by its

21  enactment. It was not alleged or proved that the selling of securities of a private Corporation to

22  private individuals in another several State is a violation of Titles 15 or 17 when the United States

23  is not damaged in its property or its business and no crime is alleged, and it is insisted that, such

24  being the case, the acts charged, but not proved, upon which judgment was had, do not come

25  within the statute.

26          11. Plaintiffs complaint alleges that defendant enforcement agents of the Securities and

27  Exchange Commission an Independent Establishment or Corporation of the Executive

28  Department, acting under color of federal authority, made the use of Title 15 and 17 U.S.C. to

-4-

1   sue Plaintiff knowing that the rules and regulations upon which it sought relief in the United

2   States District Court for the Southern District of New York were inapplicable or, not for general

3   applicability when not filed in the federal Register, as required by law, against Plaintiff and not

4   authorized by the sovereign against private individual and his private business when the United

5   States has not been damaged in its property or its business, are not a purchaser of securities, nor

6   has any crime been alleged.

7      12. Because of "notice," ( See Blacks 4th Ed pg 1210-1211) their actions are not error, it

8   is deliberate misconduct by Defendants, they acted ultra vires. Defendants cannot now claim that

9   they did not know they were acting outside their delegated authority.

10   The Constitution provides:

11      Article I Section 8 [§ 17.] To exercise exclusive Legislation in all Cases whatso-ever, over
such District (not exceeding ten Miles square) as may, by Cession of particular States, and

12      the Acceptance of Congress, become the Seat of the Government of the United States,
and to exercise like Authority over all Places purchased by the Consent of the Legislature

13      of the State in which the same shall be, for the Erection of Forts, Magazines, Arsenals,
dock-Yards and other needful Buildings ;-And

14

15      [§ 18.] To make all Laws which shall be necessary and proper for carrying into Execution
the fore-going Powers, and all other Powers vested by this Constitution in the
Government of the United States, or in any Department or Officer thereof.

16

17   And the SEC provides:17 CFR § 202.5(e) Enforcement Activities.

18      (e) The Commission has adopted the policy that in any civil lawsuit brought by it or in any
administrative proceeding of an accusatory nature pending before it, it is important to
avoid creating, or permitting to be created, an impression that a decree is being entered or

19      a sanction imposed, when the conduct alleged did not, in fact, occur. Accordingly, it
hereby announces its policy not to permit a defendant or respondent to consent to a

20      judgment or order that imposes a sanction while denying the allegations in the complaint
or order for proceedings. In this regard, the Commission believes that a refusal to admit

21      the allegations is equivalent to a denial, unless the defendant or respondent states that he
neither admits nor denies the allegations.

22

23   Plaintiff has denied the allegations and has never stated "that he neither admits nor denies the

24   Allegations," yet he was sanctioned when the conduct alleged never occurred. The attorneys

25   enforcing would not agree to a settlement unless that Statement was a part of the settlement.

26   Plaintiff stood on his rights for 5 years and has done nothing but challenge the authority of the

27   SEC to punish him and his business. I was even denied the right to defend my private business, I

28   was not defending the allegations of the Complaint against his business, all I did was to challenge

1    the authority of the Court over my person and my business by stating that the court lacked the

2    three essentials of good jurisdiction, jurisdiction of the parties, jurisdiction of the subject matter,

3    and the power or authority to decide the particular matters presented. The Court lent its

4    jurisdiction to SEC which was obtained by fraud or deceit, actual or legal, and by trick and device

5    or illegal act. By this violation, the property of my business was seized and taken and my personal

6    property was disgorged. The SEC never proved jurisdiction as required by law.

7         13. The Attorneys for the SEC were enforcing its rules and regulations under the

8    commerce clause, or as it appears by the Complaint were acting for the general welfare of the

9    private Citizens and business in the several States when such Citizens were selling and buying

10   stock of private Corporations not chartered in the District of Columbia nor any place within the

11   legislative authority of Congress. Where Congress has not enacted legislation regarding the

12   subject matter which would operate against private individuals and businesses, there is a lack of

13   police power by agencies of the of the Executive enforcing. See Police Power, infra.

14        14. Defendants in over 5 years of litigation were "noticed" of their lack of authority via

15   Judicial Notice, pleadings, filings and a personal "notice" at deposition, yet without denial or

16   rebuttal continued their unlawful acts; they failed to support and defend the Constitution and law

17   of the United States, thus violated their Oath.

18        15. This action is such as to create a personal liability, whether sounding in tort or in

19   contract, the fact that the officer is an instrumentality of the sovereign does not, of course, forbid

20   a court from taking jurisdiction over a suit against him. See *Sloan Shipyards Corp. v. Emergency*

21   *Fleet Corp.*, 1922, 258 U.S. 549, 567. As was said in Brady [*337 U.S. 682 , 687*] v. Roosevelt

22   S.S. Co., 1943, 317 U.S. 575, 580 , the principle that an agent is liable for his own torts 'is an

23   ancient one and applies even to certain acts of public officers or public instrumentalities.

24        *Continental Casualty Co. v. United States*, 113 F.2d 284, 286 (5th Cir. 1940)
     "Public officers are merely the agents of the public, whose powers and authority

25        are defined and limited by law. Any act without the scope of the authority so
     defined does not bind the principal, and all persons dealing with such agents are

26        charged with knowledge of the extent of their authority". See also BIVENS v.
     SIX UNKNOWN FED. NARCOTICS AGENTS, 403 U.S. 388 (1971)

27

28        16. NOTICE: Plaintiff having entered this court of the United States pursuant to Article

1   III Section 2 clause 1. ". . . no act of Congress can authorize a violation of the Constitution."

2   *Almeida Sanchez v. United States*, 413 US 226, 272, 37 L.Ed 2d 596, 93 S.Ct 2535 (1973);

3   "where rights secured by the Constitution are involved, there can be no rule making or legislation

4   which would abrogate them." *Miranda v. Arizona*, 384 US 436, 491. See also Article VI Section

5   2. This will assist to eliminate any statutory defense that the defendant wishes to use or United

6   States in substitution, because this suit is not, in effect, a suit against the sovereign.

> It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms. Lake County v. Rollins, 130 U.S. 662, 670 , 671 S., 32 L. ed. 1060, 1063, 1064, 9 Sup. Ct. Rep. 651; Bate Refrigerating Co. v. Sulzberger, 157 U.S. 1, 33 , 39 S. L. ed. 601, 610, 15 Sup. Ct. Rep. 508; United States v. Lexington Mill & Elevator Co. 232 U.S. 399, 409 , 58 S. L. ed. 658, 661, L.R.A.1915B, 774, 34 Sup. Ct. Rep. 337; United States v. First Nat. Bank, 234 U.S. 245, 258 , 58 S. L. ed. 1298, 1303, 34 Sup. Ct. Rep. 846.

17. Nothing has been held more fundamental to the supremacy of law than the right of every citizen to bring the action of government officials to trial in the ordinary courts of the common-law. That government officials, on the contrary, should themselves assume to perform the functions of a law court to determine the rights of individuals, as is the case under a system of administrative justice, has been traditionally felt to be inconsistent with the supremacy of law. In short, every citizen is entitled, first, to have his rights adjudicated in a regular common law-court, and, secondly, to call into question in such a court the legality of any act done by an administrative official. Defendants authority was called into question for 5 years, we are here to prove the truth of the above.

18. Plaintiff through research, truly believes that it is not Congress whom has legislated regarding the subject matter in the acts to apply to private individuals and businesses when there has been no obstruction of restraint upon commerce, or where the United States has not been damaged in its business or its property, is not a purchaser of securities, it is the defendant enforcement officers, whose individual acts violate of the Constitution and law of the United States when enforcing their discretionary powers under the Securities Acts of 1933 and 1934.

> A claim is insubstantial only if ""its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for

the inference that the questions sought to be raised can be the subject of controversy.'" Ex parte Poresky, supra, at 32, quoting from Hannis Distilling Co. v. Baltimore, supra, at 288; see also Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105 -106 (1933); McGilvra v. Ross, 215 U.S. 70, 80 (1909)." Goosby v. Osser, 409 U.S. 512, 518 (1973*). HAGANS v. LAVINE*, 415 U.S. 528, 538 (1974)

It is said that whatever may be the power of a state over such subjects, Congress cannot forbid single individuals from disposing of their stock in a state corporation, even if such corporation be engaged in interstate and international commerce; that the holding or purchase by a state corporation, or the purchase by individuals, of the stock of another corporation, for whatever purpose, are matters in respect of which Congress has no authority under the Constitution; that, so far as the power of Congress is concerned, citizens, or state corporations, may dispose of their property and invest their money in any way they choose; and that in regard to all such matters, citizens and state corporations are subject, if to any authority, only to the lawful authority of the state in which such citizens reside or under whose laws such corporations are organized. *NORTHERN SECURITIES CO. v. U.S.,* 193 U.S. 197, 333, 334 (1904)

The interstate commerce power of Congress justifies only such regulations as act upon that commerce directly, and does not authorize regulations abridging the police powers of the states or the personal rights and privileges of individuals, if they affect that commerce only indirectly, remotely, incidentally, and collaterally [193 U.S. 197, 274] Re Greene, 52 Fed. 104; United States v. E. C. Knight Co. 156 U.S. 1, 39 L. ed. 325, 15 Sup. Ct. Rep. 249; Gibbons v. Ogden, 9 Wheat. 203, 6 L. ed. 71; United States v. Joint Traffic Asso. 171 U.S. 505, 43 L. ed. 259, 19 Sup. Ct. Rep. 25; Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 44 L. ed. 136, 20 Sup. Ct. Rep. 96; Hopkins v. United States, 171 U.S. 592, 43 L. ed. 296, 19 Sup. Ct. Rep. 40; Anderson v. United States, 171 U.S. 615, 43 L. ed. 305, 19 Sup. Ct. Rep. 50; Sherlock v. Alling, 93 U.S. 99, 23 L. ed. 819; Louisville & N. R. Co. v. Kentucky, 161 U.S. 677, 701, 40 S. L. ed. 849, 16 Sup. Ct. Rep. 714. *United States v. E. C. Knight Co.* 156 U.S. 1, 39 L. ed. 325, 15 Sup. Ct. Rep. 294.

If a thing restrains interstate commerce, it is immaterial with what innocent intent it may be done. On the other hand, if the thing complained of does not restrain interstate commerce, it is immaterial how evil may be the intent. [193 U.S. 197, 275] United States v. Trans-Missouri Freight Asso. 166 U.S. 290, 341, 41 S. L. ed. 1007, 1027, 17 Sup. Ct. Rep. 540.

Of the various reasons for investing the Federal government with the power to regulate commerce among the several states, the one uppermost in the minds of the members of the constitutional convention was to keep the channels of such commerce open and free from obstructions and restraints. *Pensacola Teleg. Co. v. Western U. Teleg. Co* 96 U.S. 1, 24 L. ed. 708. Emphasis mine.

19. Other cases in support of my claims:

The Court in NLRB v. Jones Laughlin Steel Corp., 301 U.S. 1. (1937), the Court upheld the National Labor Relations Act against a Commerce Clause challenge, and in the process, departed from the distinction between "direct" and "indirect" effects on interstate commerce. Id., at 36-38 ("The question [of the scope of Congress' power] is necessarily one of degree"). The Court held that intrastate activities that "have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions" are within Congress' power to regulate. Id., at 37, 57 S.Ct. At

1    624. Emphasis mine

2    Later in 1947, <u>United States v. Darby</u>, 312 U.S. 100 (1941), the Court upheld the Fair

3    Labor Standards Act, stating:

4    "The power of Congress over interstate commerce is not confined to the regulation
      of commerce among the states. It extends to those activities intrastate <u>which so</u>
5    <u>affect interstate commerce or the exercise of the power of Congress over it as to</u>
      <u>make regulation of them appropriate means to the attainment of a legitimate end,</u>
6    the exercise of the granted power of Congress to regulate interstate commerce."
      Id., at 118, 61 S.Ct., at 459.  Emphasis mine.

7
      In <u>UNITED STATES v. LOPEZ</u>, ___ U.S. ___ (1995), 10
8    . . . activities having a substantial relation to interstate commerce, <u>Jones &</u>
      <u>Laughlin Steel</u>, 301 U.S., at 37 , i.e., those activities that substantially affect
9    interstate commerce. Wirtz, supra, at 196, n. 27.
      Within this final category, admittedly, our case law has not been clear whether an
10   activity must "affect" or "substantially affect" interstate commerce in order to be
      within Congress' power to regulate it under the Commerce Clause. Compare
11   Preseault v. ICC, 494 U.S. 1, 17 (1990), with Wirtz, supra, at 196, n. 27 (the
      Court has never declared that "Congress may use a relatively trivial impact on
12   commerce as an excuse for broad general regulation of state or private activities").
      We conclude, consistent with the great weight of our case law, that the proper test
13   requires an analysis of whether the regulated activity "substantially affects"
      interstate commerce.
14
15   20. It becomes perfectly clear by the above and following that the Defendants have acted

16   without authority over me, and my business. The alleged violations did not restrain or directly

17   affect interstate commerce, a violation of the powers granted.

18   "Agencies, whether created by statute or Executive Order, must of course be free to give
      reasonable scope to the terms conferring their authority. But they are not free to ignore
19   plain limitations on that authority," *Peters v. Hobby*, 349 U.S. 331, at 345.

20   21. It is quite impossible to make a "short and concise" statement of the material facts

21   followed by citation to evidence that which would be admissible when trying to prove a negative,

22   therefore, Plaintiff asks this court to accept this statement which may be longer than the

23   requirements of Rule 56.1 definition of short. This would have been resolved if Defendants had

24   produced the express authority over Plaintiff and his business pursuant to the Constitution and the

25   laws of the United States made in pursuance thereof when challenged. They failed in this

26   requirement, that is, to prove jurisdiction as required by law.

27   We think that [298 U.S. 178, 189]  the terms and implications of the act leave no
      sufficient ground for varying rules as to the burden of proof. The prerequisites to the
      exercise of jurisdiction are specifically defined and the plain import of the statute is that
28   the District Court is vested with authority to inquire at any time whether these conditions

have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189.

22. Plaintiff alleges that the plaintiff, SECURITIES AND EXCHANGE COMMISSION (SEC) had no genuine issue as to any material fact, because it was acting upon me and my business without jurisdiction and authority pursuant to the Constitution of the United States of America and the Laws of the United States made in pursuance thereof. See Article I, Section 8 Clause 17. There is no federal police power and, the SEC acting upon Plaintiff pursuant to the Securities Act of 1933 And 1934, which is territorial, is in violation of Article 1 § 8 cl 3 and 17 of the Constitution for the United States of America. See Schoenbaum v. Firstbrook , 405 F2d 215. My claim is that the Commission and its agents, etc., were acting unconstitutionally or pursuant to an unconstitutional grant of power, which caused officers of the Government to wrongly, seize take or hold specific property to which the plaintiff or his business has title. Defendants taking or holding is a tort, and 'illegal' as a matter of general law, whether or not it be within his delegated powers. He may therefore be sued individually to prevent the 'illegal' taking or to recover the property 'illegally' held.

**THE POLICE POWER. Citations to evidence.** Ignored by Defendants though noticed. T.M. Cooley, Constitutional Limitations, ch. XVI; T.M. Cooley, Constitutional Law, ch. XIII § 4; H.C. Black, Constitutional Law, ch. XIV; J.R. Tucker, Constitution, ch. XIV; E. Freund, The Police Power; C.G. Tiedeman, Limitations of Police Power; W.P. Prentice, Police Powers; *Munn v. Illinois* (1876, 94 U.S. 113; Thayer's Cases, 743; McClain's Cases, 946); *Muglar v. Kansas* (1887, 123 U.S. 623; Thayer's Cases, 782; McClain's Cases, 938); *Wynehamer v. People* (1856, 13 N.Y. 378; Thayer's Cases, 715); *Barbier v. Connelly* (1885, 113 U.S. 27; McClain's Cases, 925; Thayer's Cases, 623); *Holden v. Hardie* (1898 169 U.S. 366; McClain's Cases, 929); *Dent v. W. Virginia* (1889, 129 U.S. 114; McClain's Cases, 934); *Slaughter-House Cases* (1872, 16 Wallace, 36; McClain's Cases, 18; Thayer's Cases, 516); *Civil Rights Cases* (1883, 109 U.S. 3;

-10-

1    McClain's Cases, 37; Thayer's Cases, 554); *Lottery Case* (1903, 188 U.S. 321; McClain's Cases

2    2d ed. 1071).

3        23. **IMPLIED POWERS OF THE FEDERAL GOVERNMENT** Implied Powers

4    Expressly Given. Ignored by Defendants though noticed. As has already been indicated by the

5    above cases, the federal government, although a government of limited and delegated rather than

6    general powers, has such implied powers as may be necessary to the reasonable exercise of the

7    powers granted. This would be true without any express provision, but it is expressly declared

8    that Congress shall have power "To make all laws which shall be necessary and proper for

9    carrying into execution " the powers previously enumerated, and "all other powers vested by this

10   constitution in the government of the United States or in any department or officer thereof "

11   (Const. Art. 1, § 8, cl. 18). This clause of the constitution has two aspects: it recognizes the

12   existence of implied powers, and it authorizes Congress to regulate the exercise of such powers

13   by the departments or officers of the United States. Plaintiff fails to find the power to regulate him

14   and his business, in their status, by the Securities Acts of 1933 and 1934, titles 15 & 17 U.S.C.

15       24. It would be impossible for Plaintiff to enumerate in an exhaustive way the classes of

16   statutory provisions which have been enacted by Congress in the exercise of its implied powers,

17   and it would be equally impossible to forecast the legislation which might be proper under implied

18   powers not, as yet, recognized or acted upon.

19       25. Under the general power to raise revenue and carry on the fiscal operations of the

20   government, Congress passed two acts incorporating a United States bank (see *McCulloch v.*

21   *Maryland*, infra), and has established a system of national banks. Under the power to regulate

22   foreign and interstate commerce, Congress has passed a variety of statutes relating to navigation,

23   immigration, and similar subjects. (See *Gibbons v. Ogden*, infra) Under the power to borrow

24   money and the general power implied from various provisions of the constitution to regulate the

25   currency, Congress has made treasury notes a legal tender in the payment of debts (Legal Tender

26   Case). Under the power given to each House of Congress to determine the rules of its

27   proceedings and to act as a coordinate branch of the legislative department, punishment of

28   contempt of the authority of either House may be provided for, and such punishment may be

-11-

1  inflicted on persons who are not members (*Anderson v. Dunn* and *Kilbourn v. Thompson*, infra).

2  Congress may regulate the methods of appointment of officers and employees of the United

3  States, and prescribe their qualifications so far as such qualifications are not prescribed in the

4  constitution itself, and it may prohibit and punish misconduct on the part of such officers (Ex-

5  Parte Curtis). Under the power to regulate commerce and in the exercise of the powers incident

6  to sovereignty which belongs to the government of the United States, Congress had provided for

7  the exclusion of the Chinese (*Chinese Exclusion Case* and *Fong yue Ting v. United States*, infra).

8    26. **Restrictions on the Exercise of Power by Congress.** Ignored by Defendants though

9  noticed. What has been said previously as to express and implied restrictions on the powers of the

10  several departments of the federal and state governments, is especially applicable to the powers of

11  Congress. It cannot exercise any power not given to it by express grantor reasonably implied from

12  the powers which are granted. Furthermore, there are express limitations on its power such as

13  those enumerated in Article 1, § 9, of the constitution which, although not directly stated to be

14  limitations on congressional power, are evidently intended to apply especially to Congress, as they

15  are included in the article of the constitution relating to the legislative department.

16    27. **IMPLIED POWER OF FEDERAL GOVERNMENT. Citations to evidence.**

17  Ignored by Defendants though noticed: J. Story, Constitution, §§ 433-435, 1236-1294, 1329,

18  1330; T.M. Cooley, Constitutional Law, ch. IV, § 15; H.C. Black, Constitutional Law, §§ 105-

19  106; *McCulloch v. Maryland* (1819, 4 Wheaton, 316; 4 Curtis' Decisions, 415; McClain's Cases,

20  I; Thayers cases, 1340; Marshall's Decisions, Dillon's ed. 252; *Gibbons v. Ogden* (1824, 9

21  Wheaton, 1; 6 Curtis' Decisions, 1; McClain's Cases, 235; Thayer's Cases, 1799; Marshall's

22  Decisions, Dillon's ed., 421; *Legal Tender Case* (1884, 110 U.S. 421; McClain's Cases, 442);

23  *Anderson v. Dunn* (1821, 6 Wheaton, 204; 5 Curtis' Decisions, 61; McClain's Cases, 548);

24  *Kilburn v. Thompson* (1880, 103 U.S. 168; McClain's Cases, 553); *Ex parte Curtis* (1882, 106

25  U.S. 371; McClain's Cases, 554); *Fong Yue Ting v. United States* (1893, 149 U.S. 698; McClain's

26  Cases, 567; Thayer's Cases, 374; E. McClain, Criminal Law, ch. LXVII; *Logan v. United States*

27  (1892, 144 U.S. 263; McClain's Cases, 557; Thayer's Cases, 343); Chinese Exclusion Case, *Chae*

28  *Chan Ping v. United States* (1889, 130 U.S. 581; McClain's Cases, 562).

28. Plaintiff places herein by reference the CONSTITUTION for the United States of America and the statements of material fact and citations to evidence showing the limitations of the United States administrative power by its SEC officers. An action in government must be authorized by law and the Constitution. Ignored by Defendants though noticed.

29. In general, the powers and duties of officers are prescribed by the Constitution or by statute, or both, and they are measured by the terms and necessary implication of the grant, *Clock Co. v. Waltham*, 272 Mass 396,172 NE 960, 71 ALR 960 (officers must adhere to statutory standard for assessment of taxes), and must be executed in the manner directed, *Shembaugh v. City Bank*, 118 Neb 81 7, 226 NW 460, 65 ALR 804. Ignored by Defendants though noticed.

> " The authority of public officers to proceed in a particular way and only upon specific conditions as to such matters implies a duty not to proceed in any manner other than that which is authorized by the law." *First National Bank v. Filer*, 107 Fla. 526, 145 So 204, 87 ALR 267.If broader powers are desirable, they must be conferred by the proper authority. *Federal Trade Commission v. Raladam Co.* 283 US 643, 75 L ed 1324, 51 S Ct 587, 79 ALR 1191.

As here they cannot be merely assumed by administrative officers:

> "When the right to do a thing depends upon legislative authority, and the legislature has failed to authorize it, or has forbidden it, no amount of acquiescence or consent or approval of the doing of it by a ministerial officer can create a right to do the thing which is unauthorized or forbidden.", *Department of Insurance v. Church Members Relief Asso.* 217 Ind 58, 26 NE(2d) 51, 128 ALR 635

nor can they be created by the courts in the proper exercise of their judicial functions; *Federal Trade Commission v. Raladam Co.* 283 US 643, 75 L ed 1324, 51 S Ct 587, 79 ALR 1191.

> "Courts should not tolerate or condone disregard of law and arbitrary usurpation of power on the part of any officer. Ours is a government of law, and not of men, and before any act of any official will be sustained by the courts such act must be authorized by law.'" Ex parte Owen, 10 Okla Crim Rep 2849 136, P 197, Ann Cas 1916A 522.

No consideration of public policy can properly induce a court to reject statutory definition of the powers of an officer. *Bird v. McGoldrick*, 277 NY 492,14 NE(2d) 805,116 ALR 1059.The role of the judiciary in cases of this sort BEGINS AND ENDS with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate  in some reasonable manner." *U.S. v. Correll*, 389 U.S. 299 (1967) Emphasis mine.And even where a court, in the exercise of its jurisdiction, reviews the discretionary act of a public officer, the decision of the

1   officer will not be disturbed in the absence of a showing of an abuse of discretion or an arbitrary

2   decision. *United States v. California & 0. Land Co.* 148 US 31, 37 L ed 364, 13 S Ct 458;

3   "Courts will intervene to prevent an abuse of discretion." People ex rel. *Ghent v. Cleveland, C.C.*

4   *& St. L.R. Co.* 365 Ill 443, 6 NE (2d) 851, 110 ALR 119. The courts are not bound by an officer's

5   interpretation of the law under which he presumes to act, *Hoffsommer v. Hayes,* 92 Okla 32 217

6   P 477, citing RCL.

7         30. Plaintiff understands that the Supreme Court upheld delegation despite absence of

8   standard (See *Fahey v. Maloney*, 332 US 345), however, the Court has in two cases held

9   congressional delegation to government authorities unconstitutional, Panama R. Co. v. Ryan, 293

10  US 338 and A.L.A. Schechter P. Corp., 295 U.S. 495. Defendants having no meaningful statutory

11  guide, tried to create one. The Commission should rely on "its own evaluation of the needs of the

12  industry rather than what is deemed a national policy. Here the Constitution and law of the United

13  States clearly limits arbitrary discretion. Everyone is required to take notice of the extent of

14  authority conferred by law on a person acting in an official capacity. *Hume v. United States*, 132

15  US 406, 33 L ed 393, 10 S Ct 134. Plaintiff took notice and "noticed" defendnats, they failed to

16  act upon such notice to the damage of plaintiff.

17        31. Among Defendant obligations as recipients of a public trust are to perform the duties

18  of their offices honestly, faithfully, and to the best of their ability; to support the United States and

19  state Constitutions and to obey the laws enacted thereunder; to accept the offices to which they

20  are appointed or elected, together with the burdens pertaining to such offices, to refrain from

21  activities which will interfere with the proper discharge of their duties; to use reasonable skill and

22  diligence in the discharge of their duties; and to exercise a proper degree of care in the choice of

23  their subordinates. Defendants failed in this to the damage of plaintiff.  It is not an obligation to

24  raid my home accompanied by a swat team without reasonable cause, then when no criminal

25  activity was found to file a civil action and while the lawsuit was ongoing to file press releases to

26  libel Plaintiff and his business, causing the stock to tumble. Defendants have made it a vendetta to

27  "get Zubkis" because I would not bend over, I stood on my rights as a Citizen, asked many

28  unanswered questions as to authority and now I must be punished for standing on those vested

-14-

1   rights. Defendants acting together, failed in their duty to forward my settlement proposals to the

2   Commission regardless of what was in the text. A true conspiracy, to deprive me of my property,

3   and possible act in RICO.

4       32. Every public officer is bound to perform the duties of his office honestly, faithfully,

5   and to the best of his ability, *United States v. Thomas*, 15 Wall. (US) 337, 21 L ed 89; in such a

6   manner as to be above suspicion of irregularities, State ex rel. *Fletcher v. Neumann*, 213 Iowa

7   418, 239 NW 93, 81 ALR 483; and to act primarily for the benefit of the public, *Hornung v.*

8   *State*, 116 Ind 458, 19 NE 151, 2 LRA 51 0. The enforcement officers acting ubder the

9   Commission failed in this.  An attempt to exercise those powers corruptly - as under the influence

10  of bribery or <u>in bad faith - for some improper purpose is null and void</u>."An officer acts corruptly

11  in submitting to personal influence in deciding what his action in a public matter shall be, with

12  knowledge of the facts and the purpose." *Kaufman v. Catze*n, 81 W Va 1, 94 SE 388, LRA 191

13  8B 672.

14      33. An officer's or public employee's duty of loyalty to the public and to his superiors is

15  similar to that of an agent of a private principal. He is bound to impart material information which

16  he has received in the course of his employment and is derelict in his duty when he knowingly

17  allows others to profit by his silence, *Coos County v. Elrod*, 125 Or 409, 267 P 530. He is further

18  bound to act impartially in matters pertaining to the administration of his duties, *Jaffarian v.*

19  *Murphy, 280 Mass* 402, 183 NE 110, 85 ALR 293. Particularly is this rule applicable to judges

20  and officers exercising judicial functions. Interest, relationship, and the like disqualify a judge or

21  officer exercising judicial functions from presiding in an action or proceeding.

22      34. The Supreme Court of the United States has repeatedly asserted that all the officers of

23  the government from the highest to the lowest are creatures of the law and bound to obey it. The

24  Defendants caused an execution of process upon individuals and business not subject of the suit.

25          "The officers of the law, in the execution of process, are obliged to know the
            requirements of the law, and if they mistake them, whether through ignorance or
26          design, and anyone is harmed by their error, they must respond in damages. "
            <u>Rogers v. Marshal</u> (United States use of <u>Rogers v. Conklin</u>) 1 Wall.(US) 644, 17
27          L ed 714.

28      35. It is a general rule that an officer - executive, administrative, quasi-judicial, ministerial,

or otherwise - who acts outside the scope of his jurisdiction and without authorization of law may thereby render himself amenable to personal liability in a civil suit, *Cooper v. O'Connor*, 69 App DC 100, 99 F(2d) 135, 118 ALR 1440; *Chamberlain v. Clayton*, 56 Iowa 331, 9 NW 237,41 Am Rep 101. If he exceeds the power conferred on him by law, he cannot shelter himself by the plea that he is a public agent acting under color of his office, *Nelson v. Babcock*, 188 Minn 584, 248 NW 49, 90 ALR 1472; or that the damage was caused by an act done or omitted under color of office, and not personally, *First Nat. Bank v. Filer*, 107 Fla 526, 145 So 204, 87 ALR 267. In the eye of the law, his acts then are wholly without authority, *Kelly v. Bemis*, 4 Gray (Mass) 83, 64 Am Dec 50. Defendants failed to heed to the warning (Notice).

36. A public officer who knowingly or negligently fails or refuses to do a ministerial act which the law or legal authority absolutely requires him to do may be compelled to respond in damages to one to whom performance was owing, to the extent of the injury proximately caused by the nonperformance, *Amy v. supervisors* 11 Wall.(US) 136, 20 L ed 101. Here the enforcement attorneys failed to prove jurisdiction thus caused this case to carry on for over 5 years. All they had to do is prove authority over me and my business and the whole matter would have bee resolved in the first days of the Complaint. A public officer as a rule is answerable to private persons who sustain special damage resulting from the negligent performance of the officer's imperative or ministerial duties. "An officer who wilfully and wantonly appoints an unfit and incompetent person for public duties may be liable for damage which proximately results therefrom." *Wile v. Harrison*, 105 Okla 280, 232 P 816, 38 ALR 1408. A public officer (Commissioners and Directors defendants) is liable for the misconduct or negligence of his subordinates where he is intrusted with their selection or appointment, and through carelessness or unfaithfulness appoints incompetent or untrustworthy persons." *Richmond v. Long*, 17 Gratt(Va) 375, 94 Am Dec 461. An administrative officer is, however, liable for the misconduct or negligence in the scope of the employment of those employed by or under him voluntarily or privately, and paid by or responsible to him. "If a public officer authorizes the doing of an act not within the scope of his authority, he will be held liable." *Bailey v. New York*, 3 Hill (NY) 531, 38 Am Dec 669, affirmed In 2 Denio 433.

-16-

37. It is a general rule that good faith and absence of malice constitute no defense in an action to hold a ministerial officer liable for damages caused by his nonfeasance or misfeasances, *Amy v. Supervisors* (Amy v. Barkholder) 11 Wall. (US) 136, 20 L ed 101; for an officer is under a constant obligation to discharge the duties of his office, and it is not necessary to show that his failure to act was willful or malicious, 95 Am St Rep 74. And this is likewise the rule in respect of officers with discretionary powers who have exceeded their jurisdiction and have acted without authority of law, *Stiles v. Lowell* (Stiles v. Morse) 233 Mass 174, 123 NE 615, 4 ALR 1365. Defendants are liable for their failure to heed the warning.

38. A public officer (Commissioners) who appoints a deputy is generally responsible for his official acts, because the act of the deputy, by color of the principal's authority, is that of the principal himself, who must take care to employ no person who will abuse his authority, *National Surety Co. v. State Sav. Bank* (CCA 8th) 156 F 21, 14 LRA(NS) 155, 13 Ann Cas 421. Where a judicial officer acts entirely without jurisdiction or without compliance with jurisdictional requisites, he may be held civilly liable for abuse of process even though his act involved a decision, made in good faith, that he had jurisdiction, State use of *Little v. United States Fidelity & Guaranty Co.* 217 Miss 576, 64 So 2d 697. Excuse is eliminated.

39. As plaintiff has said he does not believe Congress has violated its limitation but if it did these two cases expressly resolve the controversy. In enacting the DPPA, Congress did not run afoul of the federalism principles enunciated in *New York v. United States*, 505 U. S. 144 , and *Printz v . United States*, 521 U. S. 898. As here, his does not conclusively resolve the DPPA's constitutionality because in New York and Printz the Court held that federal statutes were invalid, not because Congress lacked legislative authority over the subject matter, but because those statutes violated Tenth Amendment federalism principles. In short, if not delegated, power is reserved. The SEC refuses to expressly prove authority under a delegation of authority pursuant to the Constitution or under the law of the United States made in pursuance thereof.

## LEGAL CLAIMS

40. The facts disclose a concerted and systematic effort by defendants to deprive Plaintiff of constitutional secured rights, including, but not limited to, those enumerated in paragraphs 1

1  through 59.

2  **FIRST CAUSE OF ACTION**

3  41. Plaintiff hereby refers to paragraphs 1 through 40 and incorporated them herein by

4  reference as though fully set forth.

5  42. Defendants have used Securities Acts of Congress 1933 & 1934 and regulations

6  allegedly promulgated thereunder pursuant to one clause of the Constitution (Art. I §8 ¶3) to

7  deny the plaintiff's rights under another Article in addition to and amendment of the Constitution

8  of the United States of America, Amendments IV, V, IX and X. It was not the intent of Congress

9  to use the Commerce Clause upon private individuals and businesses when the United States is

10  not a damaged party in its business or its property, not a purchaser of securities or when no crime

11  is alleged. See 15 U.S.C. § 15(a). There failed to exist any allegation by the SEC that Plaintiff has

12  violated the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October

13  15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as

14  the Federal Trade Commission Act (15 U.S.C. 41 et seq.), and the Act of June 19, 1936, known

15  as the Robinson-Patman Anti-Discrimination Act, and the United States was not a damaged party

16  or a purchaser of securities.

17  **SECOND CAUSE OF ACTION**

18  43. Plaintiff hereby refers to paragraphs 1 through 42 and incorporated them herein by

19  reference as though fully set forth.

20  44. Defendants have used Title 15 U.S.C. to deprive Plaintiff of his right of property.

21  Sanctions were granted when Plaintiff stood on his vested rights, refused to waive any and the

22  property of his business was seized or taken and his personal property was disgorged placed into

23  the coffers of the United States when there fails to exist authority pursuant to the Constitution of

24  the United States or any law made in pursuance thereof.

25  / /

26  **THIRD CAUSE OF ACTION**

27  45. Plaintiff hereby refers to paragraphs 1 through 44 and incorporated them herein by

28  reference as though fully set forth.

46. Defendants have used Title 15 U.S.C. to deprive Plaintiff of his liberty to offer to sell, or sell stock in his private Corporation to private Citizens of another of the several States.

## FOURTH CAUSE OF ACTION

47. Plaintiff hereby refers to paragraphs 1 through 46 and incorporated them herein by reference as though fully set forth.

48. Defendants use Title 15 U.S.C. to deprive plaintiff of his liberty to work, when they asked and were granted sanctions, that plaintiff was not fit to serve as an officer of any public Corporation; they invaded the internal affairs of a Corporation chartered in the State of Nevada.

## FIFTH CAUSE OF ACTION

49. Plaintiff hereby refers to paragraphs 1 through 48 and incorporated them herein by reference as though fully set forth.

50. Defendants have defrauded the Court by obtaining a summary judgment when they lied to the Court about Plaintiff taking the fifth in a deposition when all Plaintiff did was challenge the authority before answering any questions. Defendants failed to prove their authority over Plaintiff. This fraud resulted in the granting of summary judgment, and later sanctions were issued as a result of such lies, the property of plaintiff and his business was seized, taken and his personal property was disgorged.

## SIXTH CAUSE OF ACTION

51. Plaintiff hereby refers to paragraphs 1 through 50 and incorporated them herein by reference as though fully set forth.

52. Plaintiff as pro per was making a good faith attempt to settle the controversy before he was required to file for writ of certiorari, I knew I was not qualified to argue before the Supreme Court. Defendants and Plaintiff communicated via mail and the telephone. Defendants had stated that it was not within their authority to settle, that the Commission must make the decision on my proposals. Defendants never sent my letters of settlement to the Commission causing a delay and my time for certiorari expired. Immediately upon such expiration the SEC sought the enforcement of sanction stating that the time for certiorari had expired. This trick and device, a fraud, caused plaintiff lose his time to file his appeal to the Supreme Court thus, caused the property of plaintiff

1  to be seized and the property of his business to be taken through sanctions. A violation of the

2  Fourth and Fifth Amendments, notwithstanding that they lacked the authority to enforce as stated

3  above.

> The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the state or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend to criminate him. He owes no such duty to the state, since he receives nothing there from, beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the state, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his rights are a refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under a warrant of the law. He owes nothing to the public so long as he does not trespass upon their rights. *Hale v Henkel*, 201 US 43, 74

## SEVENTH CAUSE OF ACTION

11  53. Plaintiff hereby refers to paragraphs 1 through 52 and incorporated them herein by

12  reference as though fully set forth.

13  54. By the unlawful acts of the defendants, plaintiff liberty was denied by invasion of his

14  privacy when there exists no constitutional or statutory authority to seize documents, depose or

15  ask questions in interrogatories . The documents demanded and answers to questions were made

16  under duress as reflected in the record, caused the court to make a decision based upon an action

17  for which there exists no authority. Plaintiff and his business by the unlawful invasion of his

18  privacy, were punished via sanctions, slandered and libeled.

## EIGHTH CAUSE OF ACTION

20  55. Plaintiff hereby refers to paragraphs 1 through 53 and incorporated them herein by

21  reference as though fully set forth.

22  56. Enforcement officers caused injury by libel to the reputation of plaintiff by publication

23  and letter writings, imputations affecting the Plaintiff in his business, trade and profession. This

24  communication was intentional and with malice and not authorized.

## CONCLUSION

26  57. The very identifying badge of the American administrative agency is power, without

27  previously existing rules, to determine the legal rights of individual parties. For instance, the

28  Attorney General's committee on administrative procedure said: "The committee has regarded as

the distinguishing feature of an 'administrative' agency the power to determine, either by rule or by decision, private rights and obligations." The Congress of the United States did not respond to that statement by saying it violates the rule of law. Instead, it accepted the statement as a foundation for the Administrative procedures Act. The defendants throughout this controversy have completely ignored "notice" of sections of the Administrative Procedures Act limiting their authority, provided by the Plaintiff and were completely disregarded.

58. Private Plaintiff and his private business, which he has a right to protect, have suffered monetary losses of about $ 2,000,000,000 when the unlawful actions of the defendants caused the value of the stock to go from $16.00 to $.16, humiliation, embarrassment, and mental suffering as a result of the agents' unlawful conduct was caused to Plaintiff. Defendants unlawfully disgorged $22,000,000 from Plaintiff to be placed in the coffers of the United States, thus depriving the Citizens of the several States who have purchased stock from recovering if Plaintiff has damaged them. They have Seized and taken a Yacht belonging to his private Corporation to satisfy Plaintiffs personal disgorgement.

59. Plaintiff stood and was belligerent in protecting his rights. On this resistance the defendants were granted contempt sanctions. The SEC falsely, maliciously, and with obvious intent to destroy my reputation as a businessman, issued press releases, gave newspaper interviews and otherwise broadcast throughout the world information implying I personally own assets acquired through misuse of investors funds. In another libelous maneuver, the SEC enforcement officers sent out thousands "wanted posters" disguised as business letters to my business associates.

> In such cases there is no safety for the citizen, except in the protection of the judicial tribunals, for rights which have been invaded by the officers of the government, professing to act in its name. There remains to him but the alternative of resistance, which may amount to crime. *Bivens*, 403 U.S. 388, 395, and

> The role of the judiciary in cases of this sort BEGINS AND ENDS with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *U.S. v. Correll*, 389 U.S. 299 (1967)]

60. Again this court is respectfully reminded that I believe Congress did not intend to

legislate consequences that are unconstitutional, "but it is not permissible, in my judgment, to take a lateral step that robs legislation of all meaning in order to avert the collision between its plainly intended purpose and the commands of the Constitution." See *Welsh v. United States*, 398 US 333, 354. It is the Defendants who have overstepped their delegate authority and they have never provided proof to me, or the court that they did not, they acted arbitrarily, they abused their discretion among the other violations that have damaged Plaintiff. As late as 1979 the Supreme Court of the United States ruled:

> It is a commonplace in our jurisprudence that an administrative agency's consistent, longstanding interpretation of the statute under which it operates is entitled to considerable weight. This deference is a product both of an awareness of the practi-cal expertise which an agency normally develops, and of a will-ingness to accord some measure of flexibility to such an agency as it encounters new and unforeseen problems over time. But this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history. On a number of occasions in recent years this Court has found it necessary to reject the [agency's] interpreta-tion of the various [statutes it administers]. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Daniel, 439 U.S. 551, 566, 99 S.Ct. 790, 800, 58 L.Ed.2d 808, n. 20 (1979).

It was certainly not the intent of Congress to violate Amendment X when legislating the securities Acts of 1933 and 1934.

## EQUITY

61. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless the court grants the declaratory and injunctive relief the plaintiff seeks.

## RELIEF

60. WHEREFORE, Plaintiff respectfully requests that this court enter a judgment as follows:

1. A declaratory judgment that the defendants' acts, policies and practices herein described and complained of violated Plaintiff's vested rights under the United States Constitution and/or law of the United States.

2. Demand that Defendants make a public apology to plaintiff in the media where he was libeled.

3. Defendants are jointly ans severally liable for out of pocket damages in the amount of at least

-22-

1  $22,000,000, or in the alternative the return of Plaintiff's stock. This alternative only if the United

2  States is not caused to be a party.

3  4. Actual damages jointly and severally  $2,000,000,000.

4  4. Costs of suit.

5  5. Any other relief as the court deems proper.

6  DEMAND FOR JURY TRIAL. Plaintiff demands a jury trial on all questions of fact.

7       I, Vladislav Steven Zubkis, swear under penalty of perjury that the above is true and

8  correct to the best of my knowledge.

9  Dated October 21, 2003 at City of Bonita, County of San Diego, State of California

10

11

12

13  _____

    Vladislav Steven Zubkis

14      6730 San Miguel Rd.

    Bonita, California 91902

15      (619) 889-6660

    (619) 475-2522

16

17

18

19

20

21

22

23

24

25

26

27

28

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

Vladislav Steven Zubkis

03 OCT 23 PM I:
SOUTHERN DISTRICT OF CA

BY:
DEPUTY

**DEFENDANTS** William H Donaldson, Cynthia A. Glassman,Harvey J,Goldschmid, Paul S. Adkins, Roel C. Campos, Elizabeth Jacobs, Carmen J. Lawrence, Edwin H. Nordlinger,Henry Klehm III, Jacqueline A Zacker,Kay L. Lackey,Ernest E. Badway, Wayne M. Carlin, Mark K. Schoenfeld, Peter A, Pizzani,John J. Graubard,Anthony J. Rosso,Defendants 1-5

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Vladislav Steven Zubkis
6730 San Miguel Rd.
Bonita, California 91902

ATTORNEYS (IF KNOWN)

UNKNOWN

**'03 CV 2104 JH AJB**

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTE | DEF | | PTE | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☒2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY

Violation of vested rights. Filed Under Article III U.S. Constitution, Diversity of Citizenship

42: 1983cv(SP)

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☒ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $
2,000,000,000

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY: (See instructions)

JUDGE _____    DOCKET NUMBER _____

# 098210 $150.00

DATE 10/23/03

SIGNATURE OF ATTORNEY OF RECORD